MATTER OF LEE

In Visaa Petition Proceedings

A–20316834

*Decided by Board March 21, 1975*

The petitioner, a United States citizen, applied for preference status for the beneficiary as her brother under the provisions of section 203(a)(5) of the Immigration and Nationality Act. However, blood tests excluded the claimed relationship and the visa petition approval was revoked. Petitioner's mother now claims that she adopted the beneficiary at birth in Hong Kong in 1957. The petition must be denied for two reasons. First, under Chinese law, the beneficiary's mother could not adopt without the consent of her husband (who was unaware of the alleged adoption in 1957). Such consent was not forthcoming until 1973, after beneficiary had passed the age of 14 years (see section 101(b)(1)(E) of the Act). Secondly, the sole evidence presented in support of the adoption was a statutory declaration executed by the putative adoptive mother in 1973. This evidence does not meet the standards for proof of Chinese customary adoption. See *Matter of Kwan*, 14 I. & N. Dec. 175 (BIA 1972) and *Matter of Chin*, 14 I. & N. Dec. 150 (BIA 1972).

ON BEHALF OF PETITIONER:  Z. B. Jackson, Esquire
Jackson & Hertogs
580 Washington Street
San Francisco, California 94111

The United States citizen petitioner applied for preference status for the beneficiary as her brother under section 203(a)(5) of the Immigration and Nationality Act. The district director approved the petition on June 15, 1973. However, when blood tests excluded the claimed relationship, the district director notified the petitioner of his intent to revoke approval of the petition. After giving the petitioner an opportunity to submit evidence in opposition to revocation, the district director revoked approval of the visa petition in a decision dated July 18, 1974. The petitioner has appealed from that decision. The appeal will be dismissed.

The petitioner's mother now claims that she adopted the beneficiary at birth in Hong Kong in 1957 and raised him as her son. Her husband was not informed of the adoption until sometime after October 16, 1973; prior to that time he had allegedly considered the beneficiary to be his blood son.

Upon learning the true circumstances of the beneficiary's birth, the

husband purportedly consented to the adoption. By that time, however, the beneficiary was beyond the 14-year age requirement for adoption in accordance with section 101(b)(1)(E) of the Act. See *Matter of Butterly*, 14 I. & N. Dec. 460 (BIA 1973).

The law of adoption applicable to Chinese domiciled in Hong Kong, in addition to recent enactments by the Hong Kong authorities, has been Chinese law and custom. *Matter of Poon*, 14 I. & N. Dec. 155 (BIA 1972); *Matter of Ng*, 14 I. & N. Dec. 135 (BIA 1972). The record contains a memorandum regarding Chinese law and custom in Hong Kong prepared in March 1974 by the Far Eastern Law Division of the Library of Congress.

That memorandum contains the following passage taken from T'ung-tsu Chu, *Law and Society in Traditional China* 104 (Paris: Mouton & Co. 1965):

> A wife's authority was controlled and limited by her husband. To be sure, she had the right to discipline her children and arrange for their marriages, but she could not go counter to her husband's will. And while she had authority to control the household and the household property, this authority also derived from her husband. Any activity over and above routine matters had to be approved by him. This was clearly stated by the Supreme Court [of China] as late as 1916. Undoubtedly, it reflected a traditional viewpoint.

The same source also indicates that under the principle of the "three dependencies," the wife in the traditional Chinese household could never act autonomously.

Another authority on Chinese law indicates that the wife in traditional Chinese society was not the equal of her husband. The concept of husband and wife having "equal rank" was merely an external aspect; inside the house, the wife owed obedience to her husband. M. J. Meijer, *Marriage Law and Policy in the Chinese People's Republic* 15 (Hong Kong: Hong Kong University Press 1971).

In an unpublished decision, *Matter of Wing Hon Leong*, A-17190825 (BIA September 30, 1971), we considered the question of an adoption by a married woman without her husband's consent under the law of China prior to the effective date of the Civil Code of the Republic of China. We found that there was no provision of Chinese law in effect prior to the Civil Code which would have permitted an adoption to be effective as to a married man without his consent or knowledge.

Counsel has relied on an earlier unpublished decision, *Matter of Lung Chan*, VP3-I-123920 (BIA April 30, 1962). In that case we recognized an adoption under Chinese law and custom in Hong Kong where there evidently had been an accidental switch of children at birth, and neither parent knew that the child was not their blood child until blood tests were undertaken. The result in that case may have been influenced by the sympathetic factors present; we do not believe that it represents a

correct application of the adoption laws of Hong Kong, and we decline to follow it in the present situation.

In *Matter of Rodriguez*, 14 I. & N. Dec. 335 (BIA 1973), we held that an adoption by a single woman was possible under Chinese law and custom in Hong Kong. Obviously, that case is distinguishable from the present situation involving a married woman who allegedly adopted without her husband's consent or knowledge.

Nevertheless, counsel has pointed out that in *Matter of Rodriguez* we noted an assertion by the district director "that the courts of Hong Kong have accepted the principle that a married woman was capable, acting alone, of adopting a child, *In Re T.M.H. (An Infant)*, 1962 H.K.L.R. [181,] 184." In the context of *Rodriguez*, that statement was only dictum. Moreover, upon a rereading of *In Re T.M.H.*, supra, we are satisfied that case does not establish that a married woman can adopt without her husband's consent under Chinese law and custom in Hong Kong.

Counsel has also referred to our unpublished decision in *Matter of Yu Lung Hei*, A-19192671 (BIA October 3, 1973). That case, however, dealt with adoption under the Civil Code of the Republic of China and is not applicable to the present situation involving Chinese law and custom in Hong Kong.

On the basis of the information presently available to us, we conclude that the petitioner has failed to establish that a married woman is empowered to adopt without her husband's consent under Chinese law and custom in Hong Kong. Moreover, there is an additional basis for not approving this visa petition.

The sole evidence of the alleged adoption is a Hong Kong statutory declaration executed by the putative adoptive mother on October 16, 1973. This evidence does not meet the standards for proof of Chinese customary adoptions set forth in *Matter of Kwan*, 14 I. & N. Dec. 175 (BIA 1972), and *Matter of Chin*, 14 I. & N. Dec. 150 (BIA 1972).

The district director's decision to revoke approval of the visa petition was correct. The appeal will be dismissed.

*ORDER:* The appeal is dismissed.